Albert RICALDAY, Plaintiff-Appellant,

v.

Raymond K. PROCUNIER, Director, Texas Department of Corrections, Defendant-Appellee.

No. 82–2488.

United States Court of Appeals, Fifth Circuit.

July 16, 1984.

proceed with the sale of the plant to Phillipines. *H.K. Porter Co., Inc. v. Metropolitan Dade County,* 650 F.2d 778, 782 (5th Cir.1981).

Don Fogel, Houston, Tex. (Court-appointed), for plaintiff-appellant.

Mark White, Atty. Gen., H. Charles Strauss, Charles A. Palmer, James O. Kopp, Asst. Attys. Gen., Austin, Tex., for defendant-appellee.

Before THORNBERRY, WILLIAMS and GARWOOD, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a denial of a state prisoner's habeas corpus petition. Petitioner Ricalday contends that his right to effective assistance of counsel under the sixth and fourteenth amendments was violated when his attorney failed to object to and failed to appeal a variation between his indictment and the court's charge to the jury. We agree that counsel's assistance was deficient, but because we find no prejudice to the petitioner, we affirm the district court's decision.

## I.

On September 4, 1975, petitioner Ricalday shot and killed a man named Abel Moreno after an argument the two men had over a woman named Rosa Torres. Ricalday was indicted for murder under Section 19.02 of the Texas Penal Code. The statute provides:

§ 19.02. **Murder**

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(b) An offense under this section is a felony of the first degree.

TEX.PENAL CODE ANN. § 19.02 (Vernon 1974). Ricalday was indicted only under Section 19.02(a)(1) for "intentionally and knowingly caus[ing] the death of an individual, Abel Moreno, by shooting him with a gun." However, at trial, the court instructed the jury on both Subsections (a)(1) and (a)(2):

Now if you should find and believe from the evidence beyond a reasonable doubt that on or about the 4th day of September, 1975 in Nueces County, Texas, the Defendant, Albert Ricalday, did intentionally or knowingly cause the death of Abel Moreno by shooting him with a firearm, to wit, a gun, or did then and there intend to cause serious bodily injury to the said Abel Moreno and with said intent to cause such injury did commit an act clearly dangerous to human life, to wit, shooting at Abel Moreno with a gun and causing the death of the said Abel Moreno, as alleged in the indictment, then you will find the Defendant guilty of murder.

The jury convicted Ricalday of murder and sentenced him to eighty years confinement in the Texas Department of Corrections. The conviction was upheld on appeal. *Ricalday v. State*, 574 S.W.2d 782 (Tex.Crim.App.1979).

After exhausting his state remedies, Ricalday filed the instant petition on the ground of ineffective assistance of counsel under the sixth amendment. The district court dismissed the petition for lack of merit without holding an evidentiary hearing. This appeal followed.

## II.

The United States Supreme Court has recently addressed the proper standards for judging a criminal defendant's claim of ineffective assistance of counsel under the sixth amendment. *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There, the Court held that, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* 104 S.Ct. at 2064. The Court established a two-part test for determining whether counsel's assistance was so defective as to require reversal of a conviction:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.*[1]

## III.

### A. Performance of Counsel

■ Because both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact,[2] this court must make an independent determination of whether counsel's representation passed constitutional muster. *Trass v. Maggio,* 731 F.2d 288 (5th Cir. 1984). As to the district court's conclusion that counsel's performance was adequate, we disagree.

■ The proper standard for attorney performance is that of reasonably effective assistance. *Washington,* 104 S.Ct. at 2064. As previously noted, a convicted defendant must identify serious acts or omissions of counsel that are outside the range of professional competence. *Id.* at 2066. The reviewing court must give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment. *Id.*

---

1. We apply these standards to Ricalday's case even though the Supreme Court had not yet articulated them when Ricalday's attorney represented him at trial or on direct appeal, and even though the district court did not have the benefit of the new standards when it ruled on his habeas petition. Whether the new standards should apply to Ricalday's case is not a true question of retroactivity, but a question of a change in the law occurring between the date on which a lower court ruled and the date on which the ruling is considered on appeal. *See U.S. ex rel. Saiken v. Bensinger,* 546 F.2d 1292, 1294 (7th Cir.1976), *cert. denied,* 431 U.S. 930, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977); *see also Chavez v. Rodriguez,* 540 F.2d 500, 502 (10th Cir.1976), *cited with approval in Holloway v. McElroy,* 632 F.2d 605, 638 n. 52 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). In such situations, the appellate court is to apply the law as it exists at the time of appellate review. *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); *Edwards v. Sea-Land Service, Inc.,* 720 F.2d 857, 859 (5th Cir.1983).

Furthermore, as the Supreme Court indicated in *Washington,* the fact that the district court decided Ricalday's habeas claim under slightly different standards does not require a redetermination by that court of the petitioner's claim:

To the extent that [whether the result of a proceeding is reliable] has already been the guiding inquiry in the lower courts, the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards. Cf. *Trapnell v. United States,* 725 F.2d [149] at 153 [ (2nd Cir.1983) ] (in several years of applying "farce and mockery" standard along with "reasonable competence" standard, court "never

found that the result of a case hinged on the choice of a particular standard"). In particular, the minor differences in the lower courts' precise formulations of the performance standard are insignificant: the different formulations are mere variations of the overarching reasonableness standard. With regard to the prejudice inquiry, only the strict outcome-determinative test, among the standards articulated in the lower courts, imposes a heavier burden on defendants than the tests laid down today. The difference, however, should alter the merit of an ineffectiveness claim only in the rarest case.
104 S.Ct. at 2069.

In the instant case, the habeas court found that, "Based on the totality of the circumstances and the entire record, Petitioner's defense counsel was not ineffective." This standard for performance of counsel is very similar to that expressed in the *Washington* opinion: The court is to determine "whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance." *Id.* at 2066.

As to the prejudice inquiry in Ricalday's case, the habeas court determined that the evidence of petitioner's guilt was so overwhelming that the erroneous jury instruction "could not have been a contributing factor in the jury's decision to convict." Because the petitioner failed to prevail upon this lesser showing of prejudice, he could not prevail in the district court now that the prejudice standard requires a showing of reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Washington,* 104 S.Ct. at 2068.

2. *Washington,* 104 S.Ct. at 2070.

What counsel failed to do in the instant case was to object to a variation between the indictment and the jury instructions and to raise the issue of the variation on direct appeal. The indictment charged Ricalday with intentionally and knowingly causing the death of an individual. The jury instructions, however, added another offense: intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual. This variation between the indictment and the jury instructions is a very serious matter under both Texas law and federal constitutional law.

■■■ Under Texas law, where the charge allows conviction on an unindicted offense, the error is "fundamental" and reversal is required. *Bentacur v. State*, 593 S.W.2d 686 (Tex.Crim.App.1980); *Moring v. State*, 591 S.W.2d 538 (Tex.Crim. App.1979); *Stewart v. State*, 591 S.W.2d 537 (Tex.Crim.App.1979). Even if, as here, no objection is made at trial, Texas courts will reverse. *Robinson v. State*, 553 S.W.2d 371 (Tex.Crim.App.1977).[3]

■■■ Under federal constitutional law, a violation of the due process clause results when a criminal defendant is convicted of a crime he was never charged with committing: "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge ... are among the constitutional rights of every accused." *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, 647 (1948).[4] *Plunkett v. Estelle*, 709 F.2d 1004, 1009 (5th Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984);[5] *Tarpley v. Estelle*, 703 F.2d 157, 160 (5th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). Counsel's failure to object to or appeal such an egregious flaw in his trial cannot be considered to be within the "wide range of professionally competent assistance." *See Washington*, 104 S.Ct. at 2066. Even giving to counsel's performance the

3. Under the Texas doctrine of invited error, if a defendant *requests* a charge and that charge is given as requested, the defendant may not complain of any error therein. *Cadd v. State*, 587 S.W.2d 736, 741 (Tex.Crim.App.1979) (en banc); however, the doctrine of invited error would not apply to this case. The record reveals that petitioner's trial counsel did not request any portion of the charge that allowed a murder conviction under Section 19.02(a)(2). The last page of the Defendant's Requested Jury Instructions, signed by Petitioner's trial counsel, states that "only those instructions whose numbers [are] circled are the ones submitted to the Court." Requested Jury Instructions Nos. 2, 6, 7, 8, 9 and 13 are circled. As also shown on the last page of the Defendant's Requested Instructions, the trial court ruled only on those circled instructions. The court granted Defendant's Requested Instructions Nos. 2 and 9. Those instructions deal with the right of self defense and the impeachment of witnesses. Defendant's Requests Nos. 6, 7 and 8 deal with assault, and Defendant's Request for Instruction No. 13 deals with the common law marriage between petitioner and a witness.

In spite of the fact that the record conclusively shows that the petitioner's defense counsel did *not* invite error here, the federal magistrate found that an erroneous jury instruction was given at the request of petitioner's defense counsel. This fact finding was based on an affidavit by defense counsel filed in the state habeas proceeding stating that counsel *had* requested a "charge which incorrectly submitted the case to the jury on a theory not alleged in the indictment." However, as the State correctly conceded at oral argument, an affidavit unsupported by the record cannot provide the basis for a finding. *Jordan v. Estelle*, 594 F.2d 144 (5th Cir.1979). Because the record conclusively shows that petitioner's defense counsel did not invite error in this case, we have no doubt that had the issue been raised on appeal, the Texas Court of Criminal Appeals would have reversed.

4. The sixth amendment provides that "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ..." This guarantee is applicable to the states through the due process clause of the fourteenth amendment. *In re Oliver*, 333 U.S. 257, 273–74, 68 S.Ct. 499, 507–08, 92 L.Ed. 682, 694 (1948); *Spinkellink v. Wainwright*, 578 F.2d 582, 609 n. 32 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

5. In *Plunkett*, the Fifth Circuit granted habeas relief under the due process clause to a Texas prisoner for a similar variation between the indictment and the jury instructions. Petitioner Ricalday does not raise a due process issue, but only an ineffective assistance claim.

high degree of deference required by *Washington*, we cannot conclude that Ricalday's counsel's performance was adequate.

## B. Prejudice

■ An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense. *Washington*, 104 S.Ct. at 2067. Under the Supreme Court's recent formulation of the required showing for prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. The question for the reviewing court is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069. Furthermore, a verdict strongly supported by the record is less likely to have been affected by counsel's errors than one with only weak support. *Id.*

■ Applying the prejudice standard to the instant case, we must ask whether the jury would have had a reasonable doubt respecting Ricalday's guilt if counsel had objected to the addition of the instruction on intent to cause bodily injury so that the instruction would have been stricken. The question is whether, from all the evidence, the jury could have had a reasonable doubt concerning Ricalday's intent to kill, and could have convicted him of intent to cause serious bodily injury. Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was also no prejudice from the appellate error.

The first court to review the evidence at Ricalday's trial was the Texas Court of Criminal Appeals. That court, in an unpublished per curiam opinion, held that the evidence of intent to kill was sufficient to support the verdict. *Ricalday v. State*, 574 S.W.2d 782 (Tex.Crim.App.1979). The second court to review the same evidence was the federal magistrate in this habeas proceeding. That court concluded that "[b]ecause the evidence of Petitioner's guilt was so overwhelming, the erroneous instruction could not have been a contributing factor in the jury's decision to convict." Reviewing the facts for a third time, the district court adopted the Magistrate's Memorandum and Recommendation. After a fourth independent review of the record, we also find overwhelming evidence of intent to kill.

The record establishes that petitioner Ricalday had lived with Rosa Torres for six years at the time of the crime. Ricalday went into the hospital in August 1975. While Ricalday was in the hospital, Torres moved with her two children to the house of a friend, Ophelia Moreno. Torres had to move because the rent had not been paid on the house where she was living with Ricalday. Approximately a week later, petitioner was discharged from the hospital. He paid the rent and Torres and the children moved back in with him.

A week after petitioner's discharge from the hospital, Torres went back to Ophelia Moreno's house to collect some of her belongings. She testified that Abel Moreno, Ophelia's brother-in-law, forced her to stay overnight and had intercourse with her while she was sleeping. According to Torres, during the time she was at the Moreno house, Abel Moreno threatened to kill Ricalday.

Rosa Torres told petitioner of Moreno's threats and the "rape"; petitioner then put a gun in his car. On September 4, 1975, petitioner drove alone to the Moreno house. He testified that his purpose was to pick up some other belongings that Torres had left there. When Ricalday arrived, Abel Moreno was alone on the porch. An argument ensued. A twelve-year-old girl who was riding by on her bicycle testified that she heard petitioner say, "You got my girlfriend and I'm going to kill you for that." According to Ricalday, Moreno, who had his hand in his pocket, said, "If I take it out, I'm going to use it." From his posi-

tion on the porch, Moreno kicked Ricalday in the face and neck area. Ricalday went back to his car, picked up his gun, returned to the porch, and fired at least three shots at Moreno. Moreno died from three gunshot wounds in the chest and abdomen. Any one of the wounds would have been fatal. A six-inch knife was found next to Moreno's body. Ricalday fled the scene of the crime. The next day he was arrested; he confessed at that time.

Given the evidence that petitioner threatened to kill the victim for being with his girlfriend, and that petitioner took a gun in his car to the victim's house and after the argument began, went back to his car, got the gun, and shot the victim several times in the chest area, we think that the jury could not have entertained a reasonable doubt about the petitioner's intent to kill. The only evidence that petitioner did *not* intend to kill the victim is petitioner's own testimony to that effect. However, Ricalday also stated on cross examination in regard to his altercation with the victim, "It was going to be me or him."

Because the record support of intent to kill is so overwhelming, we conclude that even if counsel had objected to the addition of the instruction on intent to cause bodily injury so that the instruction had been stricken, there is no reasonable probability that the factfinder would have had a reasonable doubt concerning the petitioner's intent to kill. It follows, then, that there was also no prejudice to the petitioner from the defense attorney's failure to raise the same issue on appeal.

### IV.

Although counsel's assistance in this case was clearly deficient,[6] that deficiency caused no prejudice to the petitioner. Ac-

cordingly, we affirm the federal habeas court's denial of Ricalday's claim of ineffective assistance of counsel.

AFFIRMED.

---

**6.** Counsel's performance was not, however, so deficient, either at trial or on appeal, as to "entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic,* — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Accordingly, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding" and on whether "the result of the particular proceeding is unreliable

because of a breakdown in the adversarial process." *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). *See also Cronic,* 104 S.Ct. at 2047, n. 26 (whether "errors of counsel undermined the reliability of the finding of guilt"). We determine that the proceedings were not fundamentally unfair and that their result, and the finding of guilt, are reliable.