UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-4502
_____

DEWEY SPENCER GRAY,

Petitioner-Appellant,

versus

BRUCE LYNN, Secretary, Department
of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

(October 20, 1993)

Before KING and BARKSDALE, Circuit Judges, and DUPLANTIER,[1]
District Judge.

BARKSDALE, Circuit Judge:

Dewey Spencer Gray's appeal from the denial of habeas relief
turns on whether his counsel's failure to object to a jury
instruction, conceded by the State to be erroneous as to an element
of the charged offense (attempted murder), constituted ineffective
assistance of counsel. Concluding that it was, we **REVERSE** the
denial of the application.

_____

[1] District Judge of the Eastern District of Louisiana, sitting
by designation.

I.

On the evening of January 27, 1979, Sammy James and Patricia Gaston[2] were in bed at James' residence.[3] The bedroom door opened directly onto the front porch; and at about 9:00 p.m., someone knocked on the door. When James went to the door, he saw Gray there, with a gun in his hand.[4] James testified that, when he opened the door, Gray "told me he was going to blow my brains out".[5] According to James, he believed that, at that close range, Gray was capable of carrying out the threat. Instead, Gray hit him on the side of the head with the gun, and entered the bedroom, holding the gun pointed at James. Gray struck Gaston with the gun,[6] and again struck James with the gun on his left forehead, causing a gash which required stitches. Gaston saw Gray hit James then, but did not see a weapon in Gray's hand.

---

[2]  Gaston died after the trial, which was held in 1979.

[3]  Gaston had previously lived with Gray, with whom James had worked.

[4]  Gaston testified that, about two or three weeks earlier, she and Gray got into an argument because she had gone out with someone else. She did not want him to know who she had been out with, so she lied and told him that she had been with James; at his request, she took him to James' house.

[5]  Gaston testified that she heard a knock on the door, but did not hear anyone say anything.

[6]  James testified that Gray hit Gaston two or three times; Gaston, only once. Gaston saw Gray right after she was struck, but did not see him strike her, because she was under the covers. She testified that it felt like a hard object hit her; she did not know what the object was, but stated that it did not feel like a hand.

After the two men struggled onto the front porch, Gray pointed the gun and started to shoot, and James ran away. James testified that he saw the flame (muzzle flash) when Gray fired, and James and Gaston both testified that they heard three shots. (Both testified that they were not armed.) James was not hit; he went to a neighbor's house and called the police. Gaston testified that she heard Gray come back into the house; her clothes, which were on a chair in the bedroom, were not there when the police arrived; they were later discovered in Gray's car.

While law enforcement officers were en route to the hospital with James and Gaston, they saw Gray in his vehicle, coming back toward James' house. When the deputy sheriff turned the lights on, Gray increased his speed to avoid apprehension. The deputy pursued Gray, who sped down the road to a dead end, left his car with the motor running and the door open, and ran away through the woods. Early the next morning, another deputy encountered Gray about five miles from James' residence; Gray was arrested after James identified him. A few days later, alongside the road in the vicinity of where deputies had passed the car Gray was driving the night of the incident, a deputy found a loaded gun, with four expended cartridges, and a prescription bottle with Gray's name on the label.

Gray was indicted in February 1979 for the attempted murder of James. Trial was held that December; and, after the jury found Gray guilty of attempted first degree murder, he was sentenced to 30 years imprisonment.

Gray's conviction was affirmed on direct appeal.  *State v. Gray*, 391 So. 2d 1184 (La. 1980).[7]  While that appeal was pending, Gray filed a state application for post-conviction relief in July 1980, which apparently was rejected because his conviction was on appeal.  He filed for federal habeas relief in July 1981, asserting that he had been denied a speedy trial.  The district court's denial of relief was affirmed by our court in early 1984, and the Supreme Court denied *certiorari* that November.  *Gray v. King*, 724 F.2d 1199 (5th Cir.), *cert. denied*, 469 U.S. 980 (1984).

In December 1985, Gray filed another state application for post-conviction relief, which was dismissed in October 1986, apparently because Gray had failed to use the printed application form.  In January 1987, Gray filed another state application, asserting the same claims as in his 1985 application.  The record does not reflect any ruling on that application.

Gray filed the instant habeas application in late 1987, presenting numerous issues.  The magistrate judge found that the delay in ruling on Gray's 1987 state application, and the State's failure to offer any explanation for the delay, justified excusing the exhaustion of remedies requirement.[8]  In May 1989, the district court adopted the magistrate judge's recommendation, and dismissed Gray's claims on the merits.  On appeal, our court affirmed the dismissal of most of the claims, but vacated that portion of the

---

[7]     The only issue raised was denial of the right to a speedy trial.

[8]     The State does not claim abuse of the writ.

judgment dismissing claims that Gray received ineffective assistance of counsel and that the trial transcript had been altered, and remanded for further proceedings on those claims. *Gray v. Phelps*, No. 89-4435 (5th Cir. Oct. 17, 1990) (unpublished).

On remand, counsel was appointed to represent Gray. The magistrate judge conducted an evidentiary hearing and again recommended that relief be denied. Over Gray's objections, the district court adopted the recommendation and dismissed the petition. Gray appealed, and our court granted a certificate of probable cause.

## II.

"To obtain review of a state court judgment under [28 U.S.C.] § 2254, a prisoner must assert a violation of a federal constitutional right". *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Gray asserts a violation of the right to effective assistance of counsel, contending that he was prejudiced by trial counsel's failure to object to an erroneous jury instruction.[9] The Sixth Amendment, applicable to the States through the due process clause of the Fourteenth Amendment, guarantees criminal defendants the reasonably effective assistance of counsel.[10] *E.g.*, *Johnson v.*

---

[9] Gray also contends that trial counsel was also ineffective in failing to properly investigate the case and call certain witnesses at trial, and that the trial transcript was altered. Because we conclude that Gray is entitled to relief on the jury instruction issue, we need not address the other two.

[10] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall ... have the assistance of counsel for his defence". U.S. Const. amend. VI.

- 5 -

*Blackburn*, 778 F.2d 1044, 1049 (5th Cir. 1985); *Ricalday v. Procunier*, 736 F.2d 203, 207 & n.4 (5th Cir. 1984).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the now well-known, two-part test for ineffective assistance of counsel:

> First, the [criminal] defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. Generally, both components of this inquiry are mixed questions of law and fact; accordingly, we generally "must make an independent determination of whether counsel's representation passed constitutional muster". *Ricalday*, 736 F.2d at 206.

A.

"In order to satisfy the first prong of the **[Strickland]** test, the petitioner must show that counsel's acts `fell beneath an objective standard of reasonable professional assistance.'" *Johnson v. Blackburn*, 778 F.2d at 1049 (quoting *Stokes v. Procunier*, 744 F.2d 475, 483 (5th Cir. 1984)). We "give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment". *Ricalday*, 736 F.2d at 206.

It was settled long before Gray's trial in 1979 that, under Louisiana law, the elements of attempted murder are (1) specific intent to kill a human being, and (2) an overt act in furtherance

thereof.  *State v. Butler*, 322 So.2d 189, 192 (La. 1975) (citing

*State v. Roberts*, 213 La. 559, 35 So. 2d 216, 217 (1948)).  *State*

*v. Butler* held that the specific intent to inflict great bodily

harm is *not* an alternative to the intent to kill element.  *Id.* at

191-93.[11]   This notwithstanding, the jury was erroneously

instructed, without objection by Gray's counsel, that Gray could be

found guilty of attempted murder if he had *either* the intent to

kill *or the intent to inflict great bodily harm*:

> [I]n order to convict of attempted first degree
> murder, you must find that the defendant attempted
> to kill Sammy James.  And that the defendant had
> the specific intent to kill or inflict great bodily
> harm.

The jury also was instructed on the lesser offenses of attempted

second degree murder, attempted manslaughter, and aggravated

battery.  None of those lesser offenses, as defined in the trial

---

[11]    In so doing, the Louisiana Supreme Court stated:

> Murder requires a specific intent to kill or
> to inflict great bodily harm.  Such an intent will
> be implied from the use of a deadly weapon--as by
> stabbing or shooting the victim.  A more difficult
> burden of proof is imposed for a conviction of
> attempted murder which requires a specific intent
> to kill....  It is conceivable ... that a deadly
> weapon may be used with a specific intent to maim
> or seriously injure, rather than to kill.  In such
> a situation the defendant would be guilty of murder
> if the victim died, but would not be guilty of
> attempted murder if the shot or blow did not kill
> the victim.  By the nature of the attempt
> definition a specific intent to commit the crime,
> which may be more demanding than the intent
> required for the completed offense, is an essential
> element of that offense.

*State v. Butler*, 322 So.2d at 192 (internal quotation marks and
citation omitted).

court's instructions, included as an element the intent to inflict great bodily harm. Immediately thereafter, the jury was instructed again that

> [a]n essential element of the offense of attempted first degree murder is specific criminal intent to kill or inflict great bodily harm.

And once again, Gray's counsel did not object.

As noted, several years before Gray's trial, the Louisiana Supreme Court held in *State v. Butler* not only that specific intent to kill is an essential element of the crime of attempted murder, but also, that an instruction permitting a jury to find an accused guilty of attempted murder if it finds the accused "guilty of *either* a specific intent to kill *or* of a specific intent to inflict great bodily harm" is reversible error. 322 So. 2d at 191, 192-93. Therefore, the failure by Gray's counsel to object to the erroneous instruction "cannot be considered to be within the `wide range of professionally competent assistance'". *Ricalday*, 736 F.2d at 207 (quoting *Strickland*, 466 U.S. at 690).

Indeed, in light of Louisiana jurisprudence, the State does not contest Gray's assertion that the failure to object falls

outside the range of professional competence.[12]  Instead, it asserts that Gray was not prejudiced by the omission.

                                    B.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense".  *Ricalday*, 736 F.2d at 208.  In order to demonstrate prejudice under this second prong of the *Strickland* inquiry, Gray must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *A reasonable probability is a probability sufficient to undermine confidence in the outcome*".  *Strickland*, 466 U.S. at 694 (emphasis added).

Applying the prejudice standard to Gray's claim, we focus on whether there is a reasonable probability that the jury would have had a reasonable doubt respecting Gray's guilt if the phrase "or inflict great bodily harm" had not been included in the charge. *See Ricalday*, 736 F.2d at 208.  In other words, "[t]he question is whether, from all the evidence, the jury could have had a reasonable doubt concerning [Gray's] intent to kill, and could have

---

[12]    The State does not claim waiver, pursuant to the contemporaneous objection rule; nor does it assert that, for strategic reasons, Gray's counsel intentionally did not object. (Like Gaston, Gray's trial counsel is dead.  There is nothing in the record as to why he did not object.)  Instead, it stated at oral argument that, had this error been raised on direct appeal, the conviction would have been reversed.  *See* text *infra* for a discussion of Louisiana authority which arguably holds implicitly that an ineffective assistance of counsel claim of the type in issue here is not subject to this form of waiver claim.

convicted him of intent to cause [great] bodily [harm]". *Ricalday*, 736 F.2d at 208.

As stated, the evidence was that Gray appeared at James' door with gun in hand and told James that he was going to "blow [his] brains out". But, instead of immediately firing the gun in order to carry out that threat, Gray struck James on the head with it. That first blow caused only a bruise. Later, Gray again struck James in the forehead with the gun, causing a gash that required about six stitches. After the men struggled onto the porch, Gray pointed the gun at James and, at close range, fired three shots. Although James responded affirmatively when asked if he saw "the flame coming out of the gun ... in [his] direction", none of the shots struck him.

The jury plausibly could have interpreted this evidence in at least two ways: (1) Gray *intended to kill* James by shooting him with the gun, but did not succeed; or (2) Gray *intended to inflict great bodily harm* on James by striking him and shooting him with the gun. Considering the circumstances, including the fact that Gray did not take advantage of several golden opportunities to kill James if he had intended to do so, we think there is at least a reasonable probability that the jury could have had a reasonable doubt about Gray's intent to kill, and that it convicted him instead on the basis of the erroneous instruction, because it found that he had the intent to inflict great bodily harm.

The State acknowledges that the Louisiana courts have found prejudice based on similar omissions by counsel. *See **State v.***

*Rubin*, 559 So. 2d 550 (La. App. 2d Cir. 1990); *State v. Carter*, 559 So. 2d 539 (La. App. 2d Cir. 1990); *State v. Ball*, 554 So. 2d 114 (La. App. 2d Cir. 1989).  It attempts to distinguish those cases on the ground that, in addition to the erroneous instruction, either the prosecutor, defense counsel, or both, argued to the jury that the defendants could be convicted of attempted murder if they acted with the intent to inflict great bodily harm.  The State points out that, in this case, neither the prosecutor nor defense counsel emphasized the erroneous instructions, and both argued to the jury that, in order for Gray to be convicted of attempted first degree murder, the State had to prove intent to kill.[13]

---

[13]    In his opening statement, the prosecutor told the jury:

> Before proceeding, I want to read again to you the definition of attempted murder.  It is very important that you understand the law.  Attempted murder is really found in two sections of our Code, in the murder Article and in the attempt Article. Murder is defined in Section 30 of our Criminal Code as the killing of a human being when the offender has the specific intent to kill or to commit great bodily harm.  That would be a murder. Specifically intending to kill and then killing someone.  This is not a murder charge, it's an attempted murder charge, so we have to look at another section of the Code, Section 27, which defines attempt.  Any person who has the specific intent to commit a crime and does an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the crime.  Combining these, the State contends that the defendant, Dewey Spencer Gray, had the specific intent to kill Sammy James and did an act directly toward accomplishing that object. The State will show you that the defendant pointed a gun at Sammy James -- it was loaded -- and fired at him three times.  That will constitute attempted murder.

During closing argument, the prosecutor stated:

- 11 -

Has the State of Louisiana proven the elements of attempted first degree murder? As you will recall, first degree murder requires a specific intent to kill. Has the State shown first of all that the defendant Dewey Spencer Gray had a specific intent to kill.... So, did the State prove specific intent. Well, of course. How? By the circumstances. The defendant comes up uninvited to a man's house, comes in, says I'm going to blow your head off, points a gun at him, pistol whips him, makes the man flee his own home and shoots at him. I think that's pretty good evidence he had the specific intent to kill the man. What better words can be used to describe I'm going to kill you than I'm going to blow your head off.... The second part of the State's proof is did we show that the man having the specific intent did an act directly in furtherance of his objective, that is to kill. Well of course he did. When you point a loaded dangerous weapon at someone after you've beat them with it, point it -- and after you've told them you're going to kill them -- when you point it at him and shoot it three times, it's a pretty good idea that you're doing something in furtherance of killing the man. So the State has proven, it's submitted, beyond a reasonable doubt that Dewey Spencer Gray had the specific intent to kill and did an act in furtherance of it, that is shooting a loaded weapon at the victim Sammy James.

Gray's trial counsel argued:

You heard Sammy James tell you and me that he and this defendant were no further apart than that chair and [the prosecutor] here. He had a pistol that he shot three times. Did he really want to kill him? He could have done it. That was not a bonafide honest to goodness attempt. He did beat up on him and that's what he intended to do and that's aggravated battery. It's not responsive to a charge of attempted murder.... He didn't attempt -- he didn't have any intention of killing him. He had too much opportunity to do so if he'd wanted to. He came there because this scene was set up by this girl with whom both of them had been taking their pleasures and she freely admitted it and she helped set the stage. And that was simply and solely his whole intent. His whole intent was to beat up on him and try to get him out of this triangle.... He did not really attempt to kill

Considering the evidence and the instructions as a whole, we cannot conclude that the prejudice resulting from counsel's failure to object to the erroneous instruction was cured simply by counsel stating the law correctly to the jury. Twice, the jury was instructed that it had a duty to follow the court's instructions regarding the law to be applied. Prior to opening statements, the trial judge instructed the jurors:

> I will instruct you to what the law that is applicable to this case is. Then you will retire to consider your verdict. As jurors you are the judges of the facts.... As I indicated earlier, I will later instruct you as to what the law is. And it will be your duty to accept the instructions of the law as given and then apply the[m] to the facts that you find.

----

> Sammy James because he could easily have done so. He simply wanted to beat up on him and get him out of the triangle. That is not attempted murder....

During his final closing argument, the prosecutor again argued that Gray intended to kill James:

> The charge was attempted murder. What is the difference between attempted murder and aggravated battery -- well, battery -- although it wasn't read to you -- the definition of battery is when you just intend to touch someone with a dangerous weapon. That's not what this was. It all comes back to what is intent. What intent was shown? If the man wanted to commit a battery, would he have fired at the man, trying to kill him. Would he have said, I'm going to blow your brains out -- of course not. The mere fact that [defense counsel] mentions that the shooting only took place after the man came in and after Sammy James started running doesn't make it any less an attempted murder. There were shots fired from that gun. The shots were preceded with the words, I'm going to blow your head off. The gun was pointed to the defendant. Sure the man waited around and pistol whipped a few people. Does that make it any less of an attempted murder -- certainly not.

- 13 -

And, during the charge, which was given *after* closing arguments and just before the jury retired to deliberate, the court instructed the jury:

> [I]t is my duty to instruct you on the law that applies to your deliberations.  It is your duty to follow these instructions in reaching your verdict.  Although you are the sole judges of the law and the facts on the question of guilt[] or innocence, you have a duty to accept and apply the law that the Court gives you....  Statements and arguments made by the attorneys are not evidence and are not to be considered as such.  In the opening statement, the attorneys are permitted to familiarize you with facts they expect to prove.  In closing arguments, the attorneys are permitted to present for your consideration their contentions regarding what the evidence has shown or not shown and what conclusions they think may or should be drawn from the evidence.  The opening statements and closing arguments are not to be considered as evidence.

It is more than well-settled that "juries are presumed to follow their instructions".  ***Zafiro v. United States***, ___ U.S. ___, 113 S. Ct. 933, 939 (1993) (quotation marks and citation omitted).  Here, we can find no valid basis for disregarding that established presumption.  Accordingly, we cannot conclude that the jurors ignored the court's erroneous instructions and chose, instead, to apply the law as stated correctly by counsel.  Under the court's instructions, the jury could have convicted Gray for attempted first degree murder on the basis of a finding that he had the intent to inflict great bodily harm, even if it had a reasonable doubt that he had the specific intent to kill James.  Therefore, Gray has demonstrated prejudice "sufficient to undermine confidence in the outcome" of his trial.  No more is required.

- 14 -

III.

For the foregoing reasons, the decision of the district court denying Gray's habeas application is **REVERSED**, and this matter is remanded with instructions that the district court grant the writ unless the State of Louisiana commences a new trial within 120 days following the issuance of this court's mandate.

**REVERSED and REMANDED**