IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50441
_____


JAMES OTTO EARHART,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director,
Texas Department of Criminal
Justice, Institutional Division,

Respondent-Appellee.
_____

Appeal from the United States District Court for the
Western District of Texas
_____

January 9, 1998

Before KING, JOLLY, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge

     This appeal presents the question whether the district court
erred in denying federal habeas relief to James Otto Earhart.  A
Texas jury convicted Earhart for capital murder and sentenced him
to death.  The conviction and sentence were affirmed on direct
appeal.  Earhart then filed a petition for habeas relief in the
federal district court under 28 U.S.C. § 2254.  He alleged, *inter
alia*, that defense counsel rendered ineffective assistance in
violation of his Sixth Amendment rights.  He further alleged that
failure to define "reasonable doubt" for the jury in his case, but
requiring it in all cases after his, violated his due process and
equal protection rights.  In a different vein, Earhart argued that

his petition should be dismissed and his execution stayed until he had had an opportunity to exhaust his state habeas remedies. In response to this argument, however, the State waived the exhaustion requirement. The district court accepted the State's waiver and, examining the merits of Earhart's remaining claims, denied relief. Earhart appeals. Finding no error in the district court's decision, we affirm.

I

On May 26, 1987, the body of nine-year-old Kandy Kirtland was discovered in a trash heap in Bryan, Texas. She had been missing for two weeks. The young girl was discovered with her hands tied behind her back with an electrical cord and a bullet wound to her head.

The same day, Earhart was arrested in connection with Kirtland's death. He was indicted two weeks later on charges of capital murder. Earhart pled not guilty, and the case went to trial a year later. As part of its case against Earhart, the prosecution presented an expert witness who testified that the bullet recovered from the girl was "analytically indistinguishable" from those loaded in a gun later discovered among Earhart's belongings. The expert further testified that analytically indistinguishable bullets are typically found within the same box of ammunition. The expert conceded, however, that he could not determine whether the bullet that killed Kirtland was fired from Earhart's gun and acknowledged that the bullet may not have come

from the same box of ammunition as the other bullets.  The jury found Earhart guilty of murder while in the course of kidnaping and sentenced him to death by lethal injection.[1]

Earhart took a direct appeal to the Texas Court of Criminal Appeals, which affirmed his conviction on September 18, 1991.  See Earhart v. State, 823 S.W.2d 607 (Tex. Crim. App. 1991).  The United States Supreme Court granted Earhart's writ of certiorari and remanded the case for further consideration in the light of its opinion in Johnson v. Texas, 113 S.Ct. 2658 (1993).[2]  On remand, the Court of Criminal Appeals again affirmed Earhart's conviction and sentence.  See Earhart v. State, 877 S.W.2d 759 (Tex. Crim. App. 1994).  Earhart's second petition for certiorari was denied on October 31, 1994.  Earhart v. Texas, 513 U.S. 996 (1994).

Thereafter, the trial court scheduled Earhart's execution for February 7, 1995.  Earhart immediately attempted to initiate state habeas proceedings.  He requested the state trial court to stay or withdraw his execution date and to appoint counsel to assist him in preparing a state habeas application.  Both requests were denied on January 23, 1995.  As a result, Earhart initiated federal habeas proceedings by filing a motion for appointment of counsel and for

---

[1]For a more complete discussion of the facts and evidence introduced at trial, see Earhart v. State, 823 S.W.2d 607, 611-16 (Tex. Crim. App. 1991).

[2]The issue in Johnson involved the constitutionality of Texas's death penalty.

a stay of execution. The district court granted both motions on February 2, 1995.

Earhart filed his federal habeas petition on September 29, 1995. He alleged six grounds in support of his petition: (1) trial counsel rendered ineffective assistance by failing to object properly to the admissibility of Earhart's tape-recorded statement to police; (2) trial counsel rendered ineffective assistance by failing to request an expert regarding analysis of bullet evidence; (3) the decision by the Texas Court of Criminal Appeals to require a definition of "reasonable doubt" in all subsequent cases, announced 49 days after rejecting the same rule of law in Earhart's case, violated his due process and equal protection rights; (4) the denial of an instruction informing the jury that it could give effect to mitigating evidence by declining to impose the death penalty violated Earhart's Eighth and Fourteenth Amendment rights; (5) trial counsel rendered ineffective assistance by failing to adduce sufficient evidence to support such an instruction; and (6) the "cumulative and synergistic effect" of trial counsel's errors amounted to ineffective assistance. Earhart contended that most of these claims had not been presented to state courts and that his petition should be dismissed so that he could exhaust state remedies before proceeding in federal court.

In response, the State waived the exhaustion requirement and filed a motion for summary judgment. The district court granted summary judgment against Earhart on May 15, 1996. Earhart timely

4

filed a notice of appeal.  The district court issued a certificate of probable cause on June 21, 1996.  This appeal followed.

## II

On appeal, Earhart has narrowed the number of his claims.  He now challenges the district court's decision on the ineffective assistance of counsel claims concerning his tape-recorded statement and denial of a defense expert, as well as his due process and equal protection claim.  He further argues that the district court erred by accepting the State's waiver of the exhaustion requirement.  In considering Earhart's claims under 28 U.S.C. § 2254, we accord a presumption of correctness to any state court factual findings.  See Mann v. Scott, 41 F.3d 968, 973 (5th Cir. 1994), cert. denied, 514 U.S. 1117 (1995).  We review the district court's factual findings for clear error, but decide any issues of law de novo.  Id.  Because claims concerning ineffective assistance of counsel generally involve mixed questions of law and fact, we review them de novo as well.  United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994).

## III

We first address Earhart's argument that the district court erred by accepting the State's waiver of the exhaustion requirement contained in 28 U.S.C. § 2254.  By refusing to permit him to exhaust his state habeas remedies, Earhart insists, the district court "cheated" him out of his statutory right to state habeas proceedings.  The State responds that exhaustion is unnecessary

5

because Earhart has not raised a claim requiring further factual development or a claim implicating important state interests.

We have held that exhaustion of state habeas remedies is not a jurisdictional prerequisite and, as a result, may be waived by the State. McGee v. Estelle, 722 F.2d 1206, 1212 (5th Cir. 1984) (en banc); accord Granberry v. Greer, 481 U.S. 129, 132-33 (1987). The requirement exists to protect states' interests in the enforcement of federal laws and prevent disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The district court, however, need not accept a state's waiver of the exhaustion requirement. The district court, or this court, in the exercise of its discretion, may reject a waiver in the interests of comity. See McGee, 722 F.2d at 1214. Thus, for example, if the case presents an issue involving an unresolved question of fact or state law, the court may insist on complete exhaustion to ensure its ultimate review of the issue is fully informed. See Granberry, 481 U.S. at 134-35; see also Graham v. Johnson, 94 F.3d 958, 968-70 (5th Cir. 1996).

Such circumstances are not present in this case. The facts necessary to dispose of Earhart's ineffective assistance of counsel claims are in the record.[3] The issue whether the court-announced rule regarding the definition of reasonable doubt should be applied

---

[3]For this reason, Earhart cannot sustain his claim that the district court erred by refusing to hold an evidentiary hearing on his ineffective assistance of counsel claims. See Amos v. Scott, 61 F.3d 333, 346 (5th Cir.), cert. denied, 116 S.Ct. 557 (1995).

retroactively to Earhart's case is a question of law. Thus, the claims Earhart advances turn on the resolution of legal, not factual, issues. Moreover, to the extent Earhart's claims involve questions of state law, they entail straight-forward application of principles already settled by state courts. Finally, the principal interest of the prisoner is in obtaining speedy relief on his claims, see Rose, 455 U.S. at 520, which is served in this case by giving immediate consideration to the merits of Earhart's claims.[4] In short, little counsels in favor of compelling exhaustion of state habeas remedies.

IV

We next consider Earhart's ineffective assistance of counsel claims. Earhart argues that his trial counsel rendered ineffective assistance by (1) failing to object to the admissibility of his tape-recorded statement to police on state law grounds and (2) failing to request the assistance of a defense expert on the elemental composition of the bullets in this case. Earhart further

---

[4]Of course, Earhart may seek state court habeas review solely for the purpose of delaying his impending execution. This is not, however, a legitimate reason for a federal court requiring exhaustion of state remedies. Furthermore, as the State notes in its brief, dismissing Earhart's present claims would have the ultimate effect of requiring him to litigate his future federal habeas petition under the more stringent standards of the AEDPA. Thus, we conclude that rejecting the State's waiver of the exhaustion requirement would serve no legitimate purpose, especially given the time and resources already spent taking this case on appeal, nor in any event would it likely benefit Earhart himself.

contends that the district court's failure to hold an evidentiary hearing on these issues was reversible error.

To prevail on these claims, Earhart must satisfy the familiar two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland test requires the habeas petitioner to prove that counsel's performance was deficient and that the deficient performance resulted in actual prejudice to the petitioner's defense. Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995). That is, Earhart must affirmatively prove that counsel's performance was objectively unreasonable and resulted in a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different. See id. Applying these general guidelines, we turn to the merits of Earhart's ineffective counsel claims.

A

Earhart first argues that defense counsel rendered ineffective assistance by failing to object properly to the admissibility of his recorded statement to the police. In particular, Earhart contends that the tape-recorded statement he gave to police was not prefaced with a specific warning of his right to remain silent, as required by article 38.22 of the Texas Code of Criminal Procedure. Defense counsel did not object to admission of the statement on these grounds, and the Court of Criminal Appeals refused to review

8

the claim on direct appeal because of counsel's failure to preserve the error under state law.  See Earhart, 623 S.W.2d at 621.

Texas law is clear that, so long as the State substantially complies with the requirements of article 38.22, failure to give the precise warnings included in the statute does not render a confession inadmissable.  See Hardesty v. State, 667 S.W.2d 130, 135 (Tex. Crim. App. 1985); see also Stinnett v. State, 720 S.W.2d 663, 666 (Tex. App. 1986).  The State argues that the warnings Earhart received before giving a statement substantially complied with the requirements of article 38.22.  The record shows that Earhart received the following warning before giving the recorded statement:

> You have the right to have a lawyer present to advise you prior or during any questioning.  You have the right to terminate this interview at any time.  And any statement that you do make may and probably will be used against you at your trial.  Do you understand all of the above rights?

The record further reveals that Earhart had been warned in accord with article 38.22 on at least two other occasions (including the right to remain silent), had signed a written rights form advising him of his article 38.22 rights, and had been similarly advised by a magistrate judge 14 minutes before giving the statement.

Because admission of the statement did not violate article 38.22, the State contends, Earhart cannot prove either prong of the Strickland test.  We agree.  In Clark v. State, 627 S.W.2d 693 (Tex. Crim. App. 1982), the Texas Court of Criminal Appeals,

addressing the adequacy of warnings under article 38.22, held that "the coupling of the right 'not to make a statement' with the right to 'terminate any interview at any time' if the appellant 'decided to talk with us' adequately conveyed the right to remain silent." Id. at 704. Similarly, in the instant case, Earhart was directly advised of his right to terminate the interview at any time and then cautioned that any statement *he did make* would be used against him at trial. This warning came on the heels of other warnings more precisely tracking the language of article 38.22 and expressly relating Earhart's right to remain silent. We find these warnings, when read together and as a whole, indistinguishable from those found sufficient in Clark. Admission of the statement did not violate article 38.22, and, therefore, Earhart cannot prove that defense counsel acted unreasonably in not objecting to admission of the statement.

B

Earhart's second ineffective counsel claim focuses on defense counsel's failure to request the assistance of a defense expert to testify on the elemental composition of the bullet that killed Kandy Kirtland and on the composition of those seized among Earhart's belongings. He argues that, under Texas law, denial of an expert when properly requested is a structural error mandating reversal. Because evidence relating to these bullets was a significant factor at trial, Earhart contends, he was entitled to

10

an expert and would have obtained one had the proper request been made.

Texas law supports Earhart's argument. Effective September 1, 1987, an attorney "appointed to represent a defendant in a criminal proceeding, including a habeas corpus hearing, shall be reimbursed for reasonable expenses incurred with prior court approval for purposes of investigation and expert testimony." Tex. Crim. P. Code Ann. § 26.05(a). Texas courts have interpreted this provision to extend to all experts, and the failure to approve expenses under this provision is reversible error where the defendant demonstrates a need for the expert's assistance. See Rodriquez v. State, 906 S.W.2d 70, 73 (Tex. App. 1995). Of course, since Earhart's counsel did not request an expert, he had no opportunity to show a need for expert assistance. Given the significant role the bullet evidence played in the prosecution's case, we shall therefore assume Earhart could have made a sufficient threshold showing that he was entitled to a defense expert under Texas law. See id.

Nevertheless, the district court properly concluded that Earhart was not entitled to relief on these grounds because, in this habeas proceeding, he still had failed to show or even allege that an expert could be found whose testimony would have altered the outcome of the state court trial. Even if defense counsel's failure to request an expert resulted in a fundamental defect in Earhart's trial that would have mandated reversal had it been raised direct appeal, Earhart still must demonstrate prejudice to

11

the outcome of his trial. "[T]he right to effective assistance of counsel, both at the trial and appellate level, 'is recognized not for its own sake, but because of the effect that it has on the ability of the accused to receive a fair trial.'" Goodwin v. Johnson, No. 95-20134, 1998 WL _____, at ___ (5th Cir. _____ 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). In other words, Earhart must show a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt. See Ricalday v. Procunier, 736 F.2d 203, 208 (5th Cir. 1984); see also Gray v. Lynn, 6 F.3d 265, 269-70 (5th Cir. 1993). "Because the error at the appellate stage stemmed from the error at trial, if there was no prejudice from the trial error, there was also no prejudice from the appellate error." Ricalday, 736 F.2d at 208; accord Lombard v. Lynaugh, 868 F.2d 1475, 1482 n.9 (5th Cir. 1989).

Thus, Ricalday makes clear that Earhart's failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to his habeas claim. In Ricalday, the habeas petitioner argued that his attorney rendered ineffective assistance by failing to object to a variation between the indictment and the jury instructions and by failing to raise the issue on direct appeal. We recognized that such error constituted a fundamental trial defect under Texas law and would have resulted in reversal on direct appeal even though no objection had been made at trial. See 736 F.2d at 207. Consequently, we concluded that counsel's

12

performance was deficient. See id. at 207-08. We refused to grant habeas relief, however, because the petitioner failed to establish that the error altered the outcome of the *trial*. See id. at 208-09.

For the same reason, we conclude that Earhart's claim was properly dismissed. Earhart has not identified an expert witness available to testify on his behalf or the type of testimony such a witness would have provided beyond that elicited at trial. Furthermore, he has not made any showing with respect to how any expert testimony would affect the outcome of the trial. In short, assuming defense counsel was deficient in failing to request an expert, Earhart has not established that this failure prejudiced his defense or otherwise rendered the outcome of his trial unreliable.

V

Earhart's final argument is that the decision by the Texas Court of Criminal Appeals to require a definition of "reasonable doubt," but to do so only in all subsequent cases, announced 49 days after rejecting the same rule of law in Earhart's case, violated his due process and equal protection rights. Earhart requested a jury instruction on the definition of reasonable doubt during both guilt and punishment phases of his trial. The trial court refused, and the Court of Criminal Appeals affirmed. Within less than two months after Earhart's direct appeal was decided, the Court of Criminal Appeals decided Geesa v. State, 820 S.W.2d 154

13

(Tex. Crim. App. 1991), which provided a definition of reasonable doubt to be presented to juries in all cases tried after the date of its opinion. Earhart argues that the timing of the decision and the refusal to apply the Geesa rule retroactively to his case violate the principle of fundamental fairness embodied in the due process and equal protection clauses of the Constitution.

This claim has no merit. As for Earhart's contention that Geesa should have been applied retroactively to his case, this court's decision in Lackey v. Scott, 28 F.3d 486 (5th Cir.), cert. denied, 115 S.Ct. 743 (1994), forecloses the argument. In Lackey, we rejected the exact same argument regarding the Geesa opinion. See id. at 491. As for the Texas Court of Criminal Appeal's timing of the rule announced in Geesa, Earhart points us to no precedent establishing a constitutional interest in an appellate court's timing of its announcement of a new rule. Under Teague v. Lane, 489 U.S. 288 (1989), habeas relief may not be premised on constitutional principles yet to be announced or announced after the challenged conviction became final, with two limited exceptions.[5] Even were we prepared to announce a new rule of constitutional law in accord with Earhart's argument (which we are not), neither Teague exception applies in this case. The

---

[5]The exceptions are limited to rules placing a class of conduct beyond the government's power to proscribe and "watershed" rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. See Teague, 489 U.S. at 311.

14

Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so.  <u>Victor v. Nebraska</u>, 114 S.Ct. 1239, 1243 (1994).  The district court, therefore, correctly concluded that Earhart's claim does not implicate notions of fundamental fairness.

VI

For the above-stated reasons, the judgment of the district court is

A F F I R M E D.