**Reynaldo Garcia RODRIGUEZ, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 04–93–00231–CR.**

Court of Appeals of Texas,
San Antonio.

May 17, 1995.

Rehearing Overruled July 28, 1995.

Robert Switzer, Switzer, Carroll & De Prado, San Antonio, for appellant.

Steven C. Hilbig, Criminal District Attorney and Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LOPÉZ, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

The issue in this case is whether an indigent defendant is entitled to the appointment of a defense medical expert when medical issues of a complicated nature are a significant factor in the trial. Appellant appeals a jury conviction for murder and injury to a child. Appellant pleaded not guilty and filed a pre-trial motion for the appointment of an expert to evaluate the medical evidence. His motion was denied. Trial commenced and the jury found appellant guilty. Punishment was assessed by the trial court at 99 years for both offenses. Appellant's motion for new trial reasserting his need for a medical expert was denied. Because we believe defendant was entitled to the appointment of an expert to assist in his defense, we reverse and remand for a new trial.

Christopher Briones took Christine Parra to work at a restaurant and then took her five month old son Christopher to appellant's

house on July 30, 1991, between 7:00 and 7:30 in the morning. The child had some congestion, but was otherwise in good health. Appellant was to watch the child while Parra worked, as he had done at least six days a week for the past month. Neither Briones nor Parra noticed any signs of abuse on the child.

Appellant testified that he, his infant son, and Christopher lay down on his bed to take a nap. Within an hour, appellant awoke when he heard a baby cry out and he found Christopher on the floor. Christopher had a head injury and was having trouble breathing. Appellant presumed he had fallen off the bed, possibly hitting his head on the exposed metal bed rail. Appellant's attempts to administer CPR were unsuccessful. He tried to use the neighbors' telephone but they were not home, so he put Christopher and his son in his car and drove to the restaurant where Parra worked. He planned to tell Parra he was taking Christopher to the nearby medical center. At the restaurant, he saw a fireman and hailed him to help. At trial, appellant emphatically denied ever having struck the child.

Lieutenant Xiques testified that he was fueling his fire truck when he noticed a disturbance at the restaurant across the street. When he went to the scene, appellant backed his car towards Xiques, explained that he had an injured child with him in his car, and asked for help. Xiques tried to administer CPR until an ambulance arrived to take Christopher to the hospital. The child died two days later of a skull fracture and swelling of his brain. Xiques said appellant told him they were all asleep and he awoke because he heard the child scream once and found the child on the floor.

The treating physician, Dr. Humberto Hildago, testified that a fall from a bed could

have caused the injury, but he doubted that it would have produced enough force to cause the brain to swell as much as it did. He also stated that no signs of abuse, either recent or old, were found on the child.

The State produced four other doctors who also opined that a fall from a bed could not cause such extensive swelling of the brain. The State introduced hundreds of pages of medical records. The prosecution used this evidence to argue that because these doctors did not think that appellant's hypothesis was plausible, appellant must have intentionally killed the child.[1]

In his first point of error, appellant argues the trial court erred in denying appellant's motion for the appointment of a defense medical expert, thus violating his rights of due process, equal protection, and effective assistance of counsel under the United States and Texas Constitutions. Appellant contends that appointment of a medical expert was needed to evaluate the body and medical records, help defense counsel prepare for cross examination, and possibly testify. In his second point of error, appellant asserts that the trial court erred in denying appellant's motion for new trial on this basis. The State contends that defendant did not make a sufficient showing that an expert was needed, that the right to an expert is limited to psychiatric issues, and that the appointment of an independent expert was sufficient.

A defendant is required to show how an expert would help in his defense before he is entitled to have one appointed. *Moore v. Kemp,* 809 F.2d 702 (11th Cir.) (en banc), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987); *Rey v. State,* 897 S.W.2d 333, 339–40 (Tex.Crim.App.1995). The defendant must at least supply the court with information as to what type of evidence is to

---

1. [Prosecutor]: You heard from all these doctors, and the testimony was consistent. Throughout each one of their testimony what was the same thing? The way he said it happened, could not have happened. And Dr. Bux said it best when he said, "It just can't happen. The way he says these injuries occurred could not happen."

The medical evidence is overwhelming. That's how we know it was an intentional act. . . .

We brought you five experts, specialists in their field, and each one said the same thing: The injuries are not consistent with the defendant's story. There's only one thing we can deduce from that, ladies and gentlemen, that he, in fact, did kill this child.

Now, notice, if you will, not one doctor said—not one doctor said that his story could even work.

be offered against him and how an expert would help. *Caldwell v. Mississippi,* 472 U.S. 320, 323, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985); *Ventura v. State,* 801 S.W.2d 225, 227 (Tex.App.—San Antonio 1990, no pet.). Appellant filed a pre-trial motion asserting that he needed a medical expert to "examine, analyze and compare all relevant medical evidence in this cause, including, but not limited to a physical examination of the alleged victim," and to "otherwise assist in his defense." Appellant also pointed out that the State would have its own expert. The need for an expert was reargued in his motion for new trial. Certainly by the time the motion for new trial was heard the trial court was sufficiently apprised of appellant's need for an expert since the trial had revolved around the expert medical testimony presented by the State.

■ The United States Supreme Court has identified three factors to be examined to determine if a defendant is entitled to have an appointed expert:

The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

*Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53, 62 (1985). Contrary to the State's contention, appellant has shown his interest in an expert. Few defendants or their attorneys are even remotely competent to critically examine evidence to determine what force is necessary to cause someone's brain to swell a certain amount. The charges against appellant carried severe penalties, as evidenced by the sentence of 99 years. The appellant's interest in having a doctor evaluate medical records is "obvious." *Ake,* 470 U.S. at 78, 105 S.Ct. at 1093, 84 L.Ed.2d at 63.

■ The State also has a significant interest in the fairness of the proceeding and the accuracy of the result. *Ake,* 470 U.S. at 79, 105 S.Ct. at 1094, 84 L.Ed.2d at 63. While the State has a competing interest in not paying for these experts, this factor is unpersuasive in the instant case. For one thing, the type of medical issue present in this case is fact-dependent. In contrast, the insanity defense is usually raised solely by the defendant and is not necessarily fact-dependent. Nevertheless, the court in *Ake* determined that the right to an appointed psychiatrist is not overly burdensome upon the State. *Id.* Cases like the instant one are not abundant. Usually there is little question how the person died, the critical question is who caused the death.

■ Finally, it seems highly probable that without an expert there will not be a fair trial. Unlimited State medical experts against appointed counsel does not approach being a level playing field. Nor is it fair to expect appointed counsel to pay for the expert themselves.

■ In addition to the constitutional mandate, the Code of Criminal Procedure allows for reimbursement of reasonable expenses incurred with prior court approval for expert investigation and testimony. TEX.CODE CRIM. PROC.ANN. art. 26.05(a) (Vernon 1989). Article 26.05 is not limited to psychiatric experts, but applies to all experts. A court's failure to provide approval for expenses under this article can be reversible where the defendant demonstrates a need for the expert's help. *Ventura,* 801 S.W.2d at 227.

■ The only contested issue in this case was the cause of death. The child was delivered to appellant apparently in good health. Appellant was the only person with the child (other than his own infant) at the time of the injury. Appellant was allegedly asleep and says he does not know how the injury occurred. Appellant proffered an alternate explanation for the injury—that the child fell off the bed and hit his head on the exposed bed rail. The only significant factor to be decided at trial would be cause of death. Because there were no witnesses, the cause of death would have to be decided by means of expert medical testimony and interpretation of medical records. Thus appellant made a sufficient threshold showing that he needed an expert.

The prosecution aggravated the error by arguing that appellant could have brought in experts by subpoena if he had chosen, and that since he did not, the jury should infer that no doctor would testify on appellant's behalf.[2] No mention was made of appellant's motion to have an expert appointed, or his lack of funds to hire one. Clearly, appellant could not have subpoenaed experts and thereby had them automatically perform an in-depth analysis of the body and medical records, help defense counsel prepare for trial, and testify, all without being paid. Appellant should not have suffered further penalty because his request for an expert was refused, which is effectively what the prosecution's closing argument did.

The State next contends that the appointment of an expert should be limited to insanity cases. Although earlier Texas Courts of Appeals cases stated in dicta that *Ake* should be limited to insanity cases,[3] subsequent federal and state cases have expressly overruled this contention and have expanded *Ake* to experts in general. *See Rey v. State*, 897 S.W.2d at 338 n. 4 (citing many federal cases and cases from other states directly on point); *De Freece v. State*, 848 S.W.2d 150, 159 (Tex.Crim.App.), *cert. denied*, — U.S. —, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993) ("due process requires at least a reasonably level playing field at trial"); *McBride v. State*, 838 S.W.2d 248 (Tex. Crim.App.1992).

There is no principled way to distinguish between psychiatric and nonpsychiatric experts. The question in each case must be not what field of expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given.

*Little v. Armontrout*, 835 F.2d 1240, 1243 (8th Cir.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *Terry v. Rees*, 985 F.2d 283, 284–85 (6th Cir. 1993) (defendant entitled to appointment of a pathologist to dispute State's theory of death). We too feel there are other legitimate areas where a defendant is entitled to the appointment of an expert, as did the Texas Legislature. *See* TEX.CODE CRIM.PROC. ANN. art. 26.05(a) (Vernon 1989) (authorizing payment for experts in indigent cases).

One area where a defendant is entitled to an expert is the inspection of physical evidence. In Texas "a criminal defendant has a right to inspect evidence indispensable to the State's case because that evidence is necessarily material to the defense of the accused." *McBride*, 838 S.W.2d at 251; *Bates v. State*, 587 S.W.2d 121, 131 (Tex.Crim.App.1979); *see also* TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979). An indigent defendant cannot have meaningful assistance of counsel without the same right of inspection as a non-indigent defendant, and therefore indigents are entitled in certain instances to an appointed expert to assist their defense in examining physical evidence. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799, 805 (1963); *McBride*, 838 S.W.2d at 251–52. Although the State contends that *McBride* can be distinguished because it involved cocaine, this case also has physical evidence upon which the entire case is built, the child's body. Appellant did request an expert to examine the body. It is even more difficult to evaluate a cause of death in a complicated case such as this than it is to analyze a substance to determine if it is cocaine. Further, this case involves an area where experts are more likely to differ in their opinions, thereby increasing the defendant's need to know how to cross-examine them on their methodology. As recognized by the Court of Criminal Appeals, cause of death is an important medical question addressed by medical experts that requires "more than an objec-

---

2. [Prosecutor]: [E]ither side can bring in whatever witnesses they want, no matter who they are. They could subpoena another doctor, if they wanted to; but they didn't. They could bring in their own medical experts to testify under subpoena power, but they didn't.

3. *See Wunneburger v. State*, 844 S.W.2d 864, 869 (Tex.App.—Amarillo 1992, pet. ref'd) (defendant wanted an expert to testify to recidivism rates); *Moore v. State*, 802 S.W.2d 367, 371–72 (Tex. App.—Dallas 1990, pet. ref'd) (failure to appoint an expert was not harmful since crux of case was a legal question, not a medical one). Neither case involved a medical question crucial to determining defendant's guilt.

tive or rote determination." *Rey,* 897 S.W.2d at 338.

Of course in any given case, the defendant must first show a need for the expert and that the subject of the analysis will be a significant factor in the trial. *Rey,* 897 S.W.2d at 339. This case is distinguishable from *Wunneburger v. State,* 844 S.W.2d 864, 868–69 (Tex.App.—Amarillo 1992, pet. ref'd), in which a defendant wanted the court to authorize payment for an expert to testify to the recidivism rates of individuals released from prison. This was obviously not a crucial issue to the determination of the defendant's guilt or innocence. The medical evidence in this case, however, was crucial to the defense.

The State contends that appellant was not harmed because there was an independent medical expert. The appointment of an independent expert has been ruled insufficient by both the United States Supreme Court and the Court of Criminal Appeals for several good reasons. Defendants have a right to their own expert:

This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.

*Ake v. Oklahoma,* 470 U.S. at 76, 105 S.Ct. at 1092, 84 L.Ed.2d at 61.

Neutral experts are not sufficient because they would not be able to advise the defense on how to cross examine themselves to find the flaws in their methodology. *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093, 84 L.Ed.2d at 62; *Cowley v. Stricklin,* 929 F.2d 640 (11th Cir.1991); *Buttrum v. Black,* 721 F.Supp. 1268 (N.D.Ga.1989), *aff'd,* 908 F.2d 695 (11th Cir.1990); *De Freece,* 848 S.W.2d at 153 (Although appellant was examined by an independent psychiatric expert, due process required that appellant be appointed his own expert).

Further, a neutral expert would not be subject to the attorney-client privilege. Tex.

R.CRIM.EVID. 503(b); *Granviel v. State,* 552 S.W.2d 107, 115 (Tex.Crim.App.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *De Freece,* 848 S.W.2d at 161 n. 8. Because the jury is the ultimate fact-finder, our justice system:

rests on the assumption that each party to a dispute, motivated by self-interest, will develop his position to the greatest extent possible within the boundaries of the rules of evidence and procedure, thus providing the fact-finder an optimal vantage from which to gauge all relevant facts and make an informed decision on the merits.

*De Freece,* 848 S.W.2d at 158. Therefore, just as the Court in *Ake* reasoned that it is best for the jury to hear "the psychiatrists for each party," so too we believe it would be best for the jury to hear the medical experts for each side. *Ake,* 470 U.S. at 81, 105 S.Ct. at 1095, 84 L.Ed.2d at 65.

Just like a determination of insanity, the amount of force necessary to cause someone's brain to swell a certain rate is a foreign subject to most lawyers, judges, and juries. This is an area where the raw data means virtually nothing without a competent expert to examine it, and even then experts could differ. Meaningful access to justice dictates that when there is a medical question as complex and central to the case as is presented in the instant case, we must endeavor to give defendants, whose life and liberty depend upon the decision, every reasonable opportunity to present their side of the story to the fact-finder.

The State attempts to analogize this case to *Ventura,* which we find inapplicable. In *Ventura* this Court ruled that the trial court's failure to allow payment for expert testimony, and thus the exclusion of that expert testimony, was harmless because the same testimony was admitted through another expert for the defendant. The court mentioned in dicta that a bill of exception must be offered to preserve error when expert testimony is excluded. *Ventura,* 801 S.W.2d at 227. In this case, however, there was no need for appellant to make a bill of exception because he is not complaining of the exclusion of evidence. Appellant was asking for the appointment of an expert to do much

more than merely testify. He needed the expert to examine the physical evidence and medical records and to help defense counsel prepare his cross examination of the other experts.

This case is analogous to *De Freece* and *Rey*. We note that at the time of the hearing on appellant's pre-trial motion, the trial court did not have the benefit of these decisions. However, *De Freece* was not only available, but also cited, in defendant's motion for new trial. In *De Freece* the defendant killed the mother of his child because he believed she was going to sell their son and he heard voices telling him to "kill" her. *De Freece v. State*, 848 S.W.2d 150, 159 (Tex. Crim.App.), *cert. denied,* — U.S. —, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993). The defendant had a history of hospitalizations for mental health problems and was hospitalized again after his capture, thereby placing in issue the defendant's sanity at the time of the offense. The defendant was diagnosed as schizophrenic by the hospital's doctor. At trial, the court appointed another doctor to be an independent expert. The defendant's motion for appointment of a defense expert was denied. The Court of Criminal Appeals reversed the conviction and remanded the case for a new trial stating that the appointment of an independent expert was not sufficient for the reasons we cite above. Further, the Court pointed out that although counsel might have done an admirable job in cross-examination, he probably could have done a much better job with the help of an expert. Just as in *De Freece*, we have before us a case where the crux of the trial was medical testimony.

In *Rey*, the Court of Criminal Appeals ruled that the defendant was entitled to the appointment of an expert pathologist to dispute the State's theory as to the cause of death. *Rey v. State*, 897 S.W.2d 333 (Tex. Crim.App.1995). The defendant and his cohorts beat a man while burglarizing his trailer. The man had previously had open heart surgery. The State's expert concluded that the deceased died from the wounds inflicted by the assailants, and defendant wanted an expert appointed to assist in his defense. Appellant stated that he did not have the intent to kill the deceased and reasonably thought that the beating they gave him would not kill him. Appellant thought that if he could prove the man died in part due to his previous heart condition this would buttress his story. *Rey,* 897 S.W.2d at 339–40.

We are not persuaded by the State's argument that *Rey* is distinguishable because the defendant in *Rey* had an affidavit prepared by a medical examiner to support his motion. In *Rey* a fellow defendant did have the money to hire an expert and Rey used that expert's testimony to support his motion. There was no such windfall benefit available to appellant in this case. Indigent defendants cannot be expected to hire medical experts to evaluate their claim in order to support their motion to have an expert appointed. The whole point is that these defendants do not have enough money to hire an expert.

 In the instant case, defendant wanted an expert to help in his theory that the child fell off the bed during their nap and struck his head on the exposed metal bed rail. Deciding whether a fall from that height onto that particular apparatus could have caused the injury was certainly beyond the capability of non-experts. The lack of an expert denied appellant due process, equal protection and effective assistance of counsel under the United States and Texas Constitutions. *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093, 84 L.Ed.2d at 62; *De Freece v. State,* 848 S.W.2d at 159. This error was a structural defect in the process of the trial and thus it is not subject to a harm analysis. *Rey,* 897 S.W.2d at 345.

Based on the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for a new trial.