**Thelma Lea ELMORE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11-97-039-CR.**

Court of Appeals of Texas, Eastland.

April 2, 1998.

James Eidson, Criminal Dist. Atty., Kollin Shadle, Appellate Section, Criminal Dist. Attys. Office, Abilene, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

ARNOT, Chief Justice.

Thelma Lea Elmore was convicted of driving while intoxicated and sentenced to confinement for 180 days probated for 2 years, 80 hours of community service, a fine of $300, and court costs of $290.[1] In four points of error, Elmore complains that the trial judge abused his discretion in failing to appoint an expert to assist her in impeaching the reliability of an intoxilyzer's use and results. We affirm.

Elmore was driving friends home after leaving a local bar. Officer Van Holdbrook followed Elmore for several blocks and determined that she failed to maintain a single lane of traffic and that she was speeding. After he approached the vehicle, the officer noticed the odor of alcohol and that Elmore's eyes were very bloodshot. Moreover, she was not wearing contacts or glasses, a restriction on her license. The officer administered field sobriety tests. Based on his observations, he arrested Elmore for driving while intoxicated. At the jail, Elmore gave a breath sample; and her blood alcohol concentration was 0.10, the statutory intoxication level.[2] The trial court denied Elmore's pretrial motion to have an expert appointed. The jury found Elmore guilty.

In her first point of error, Elmore argues that the trial court erred by denying her motion to appoint an expert. Constitutional due process entitles an indigent defendant to the appointment of an expert to assist in his defense when the defendant makes a preliminary showing that the issue for which he seeks expert assistance is "likely to be a significant factor" at trial. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Rey v. State*, 897 S.W.2d 333 (Tex.Cr.App.1995); see also TEX. CODE

Byron W. Hatchett, Thedford & Hatchett, Abilene, for appellant.

1. TEX. PENAL CODE ANN. § 49.04 (Vernon 1994 & Supp.1998) defines the offense and states that it is a Class B misdemeanor.

2. TEX. PENAL CODE ANN. § 49.01(2)(B) (Vernon 1994) defines "intoxicated" as having a blood alcohol concentration of 0.10 or more.

CRIM. PRO. ANN. art. 26.05(a) (Vernon 1989).[3]

■ In order to make a threshold showing for the appointment of an expert under *Ake,* the indigent's claims must be based upon more "than undeveloped assertions that the requested assistance would be beneficial." *Rey v. State,* supra. Elmore did not offer any affidavits or evidence with her motion to appoint an expert in support of her allegations. There is no record of the hearing. Without the financial ability to employ an expert, an indigent could not determine what, if anything, the expert could provide in the way of beneficial technical assistance before the expert was retained or consulted. Because Elmore could have been indicted and found guilty based on the intoxilyzer result alone, we find that this issue is a "significant factor." [4] See *Williams v. State,* 958 S.W.2d 186 (Tex.Cr.App. 1997). Consequently, we find that Elmore has preserved error for our review.

■ In *Ake,* the defendant was charged with two counts of murder, punishable by death, and was denied the appointment of an expert needed to present a defense of insanity. The Supreme Court held that, when the defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on the issue if the defendant cannot otherwise afford one. The Supreme Court listed three factors to be weighed before ruling on the appointment of an expert: first, the private interest affected by the State's actions; second, the State's interest that will be affected if the safeguard is to be provided; and third, the probable value of the additional or substitute procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

In *De Freece v. State,* 848 S.W.2d 150 (Tex.Cr.App.1993), the defendant was convicted of murder, a noncapital offense. The court examined whether, under TEX. CODE CRIM. PRO. ANN. art. 46.03 (Vernon 1979 & Supp.1998), the appointment of a "single neutral" or "court's" expert was sufficient to fulfill the role of psychiatric assistance envisioned by *Ake.*[5] Ruling that it was not, the court held that the indigent was entitled to the appointment of a psychiatrist to satisfy due process requirements. The court explained how due process was protected by the appointment of an expert. The expert can provide technical assistance; help evaluate the strength of the defense; offer his own expert opinion, if favorable; and identify any weaknesses in the State's case.

In *Rey v. State,* supra, the defendant was convicted of capital murder. For the first time in Texas, the court extended the holding in *Ake* to a nonpsychiatric expert. The court held:

> [T]he appointment of a pathologist is not per se excluded from the confines of *Ake*— in any given case, the necessity for the appointment under *Ake* will depend upon whether the defendant has made a sufficient threshold showing of need for the expertise of a pathologist in that particular case.

3. Article 26.05(a) provides:

> A counsel, other than an attorney with a public defender's office, appointed to represent a defendant in a criminal proceeding, including a habeas corpus hearing, shall be reimbursed for reasonable expenses incurred with prior court approval for purposes of investigation and expert testimony.

4. According to TEX. PENAL CODE ANN. § 49.01 (Vernon 1994), there are two ways that a person can be found intoxicated: by not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or by having an alcohol concentration of 0.10 or more. Elmore was charged using both definitions. The jury charge included both definitions in the conjunctive. To find Elmore guilty of driving while intoxicated, the jury would have to have found sufficient evidence to support both definitions.

5. Article 46.03, section 3(a) provides:

> If notice of intention to raise the insanity defense is filed under Section 2 of this article, the court may, on its own motion or motion by the defendant, his counsel, or the prosecuting attorney, appoint disinterested experts experienced and qualified in mental health and mental retardation to examine the defendant with regard to the insanity defense and to testify thereto at any trial or hearing on this issue.

In *Rodriguez v. State*, 906 S.W.2d 70 (Tex. App.—San Antonio 1995), *pet'n dism'd*, 924 S.W.2d 156 (Tex.Cr.App.1996), the defendant was charged with murder and injury to a child. In applying *Ake* and extending *Rey* and *De Freece*, the court held that the accused, an indigent, had shown that he was entitled to the appointment of a medical expert to assist in his defense.

Chief Justice Burger, in his concurrence in *Ake*, stated that "(n)othing in the Court's opinion reaches noncapital cases." *Ake v. Oklahoma*, supra at 87, 105 S.Ct. at 1098. As noted, in Texas, the due process protections recognized in *Ake* have been extended beyond the context of capital punishment. Elmore would have this court extend *Ake*, for the first time, in a misdemeanor case, to an expert not involving a direct medical examination. We have not found any case where the court, under the instructions of *Ake*, appointed an expert to assist an indigent charged with driving while intoxicated.[6] Unlike *Ake* and other cases applying the *Ake* test, Elmore seeks the appointment of an expert to impeach the reliability of the intoxilyzer test, not to assist her in establishing her mental condition or physical faculties at the time of the offense. We will apply the factors enunciated in *Ake*.

■ First, as stated in *Ake*, the private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling. Elmore was charged with a Class B misdemeanor which was punishable by a fine not to exceed $2,000, by confinement in jail for a term not to exceed 180 days, or by both such a fine and confinement. TEX. PENAL CODE ANN. § 12.22 (Vernon 1994). Although the fine and sentence may appear minimal, every criminal conviction for DWI can have subsequent ramifications.[7] Consequently, we hold that the first factor under *Ake* has been satisfied.

Next, the court is to consider the interests of the State. Unlike the appointment of a psychiatrist in *Ake*, a pathologist in *Rey* (both capital murder cases), or the medical defense expert in *Rodriguez* (a murder case), the appointment of an expert to impeach the reliability of the results of an intoxilyzer might well be argued to present a substantial economic burden on the State. Last year in Texas there were 587 capital murder cases filed or added while there were 12,159 felony DWI and 97,969 misdemeanor DWI cases filed or added.[8] The sheer volume of these cases is not something of which our State can

---

6. In *Ventura v. State*, 801 S.W.2d 225 (Tex.App.—San Antonio 1990, no pet'n), the defendant urged that the trial court erred in denying her motion for approval of expenses for expert testimony in a DWI case. In that case, which was decided after *Ake*, the court did not reach the constitutional due process issues as raised by *Ake*, rather, the court relied on the statutory authority for the appointment of medical experts pursuant to Article 26.05(a).

In that case, Ventura was being prosecuted for driving while intoxicated. Her motion for allowance of expenses showed that the expert would testify that the symptoms of an ailment (manic depression) were similar to those exhibited by a person who was actually intoxicated and would directly bear upon her guilt or innocence.

These expenses were sought under Article 26.05(a), and the court was examining whether to award the fees when there had not been prior approval by the court. In that case, the court reiterated the well-established rule that, in order to obtain prior approval of the trial court for reasonable expenses connected with expert testimony, a defendant must demonstrate to the trial court a specific need for the testimony. That demonstration for need is also recognized in *Ake*. In *Ventura*, after both sides rested, the State

revealed possible exculpatory evidence, and Ventura was allowed to reopen. Ventura presented a medical expert who testified that the videotape of Ventura taken at the time of her arrest was consistent with a person suffering from a manic episode of a manic depression illness.

Although the court held that the trial court had erred in not granting Ventura's motion under Article 26.05(a), the court held that the error was harmless because the jury was able to consider the expert testimony, which it ultimately rejected, finding that Ventura was in fact intoxicated and not merely experiencing symptoms of manic depression.

7. Section 49.04 provides for a minimum confinement of 72 hours. Under TEX. PENAL CODE ANN. § 49.09 (Vernon Supp.1998), a single prior conviction enhances the punishment to a Class A misdemeanor and minimum confinement of 15 days; and two prior convictions can raise the offense to a third degree felony.

8. 1997 TEX. JUD. SYS. ANN. REP. 285, 362. In the statistical breakdown, misdemeanor DWI and DUID (driving under the influence of drugs) cases are calculated together.

be proud. However, they serve to illustrate that there are approximately 188 DWI cases filed for every capital murder case filed. We do not imply that the seriousness of these crimes against society are comparable or that all of these crimes were committed by indigents who requested expert assistance. This comparison merely illustrates the magnitude of the potential economic burden to the State.[9] Yet, this economic burden would not place the interest of the State above an individual's right to a fair and accurate adjudication of his criminal case. Although we weigh these considerations, even in a misdemeanor charge, the law as a reflection of society should be very careful, even reluctant, to place a price on an individual's right to liberty. As in *Ake*, we conclude that the interests of the State is not substantial in light of the compelling interests of both the State and the individual in accurate dispositions.

Finally, *Ake* dictates that the court is to weigh the probable value of the expert assistance sought against the risk of error in the proceeding if such assistance is not offered. In her bill of exceptions, Elmore stated that the expert she wanted appointed would have cost $950 to $1,500 and would have testified that (1) the State's expert will distort the facts and procedures in the best light for the State and not help the defense in any way, (2) the Intoxilyzer 5000 does not provide any warranty that the machine is fit for a particular purpose, (3) the Intoxilyzer 5000 is capable of breath test preservation and the Texas Department of Public Safety purposely fails to save samples so as to burden the defendant, (4) the calculation of an "average" person is not consistent, and all different physical factors come into play when taking a breath sample, (5) there is a difference between alcohol absorption and elimination stages and the State cannot prove defendant was in the elimination stage when tested, (6) there is an error factor of 5 percent in intoxilyzer tests, (7) the accuracy of the field sobriety tests and the overall accuracy of the tests taken together is only 65–80 percent, and (8) optokinetic nystagmus can be a contributing factor in failing a horizontal gaze nystagmus test.

Sarah Morris, a civilian breath test operator, administered the test to Elmore. She had been certified to operate the Intoxilyzer 5000. Sergeant Rafe Charles Harshberger, the State's expert, was the technical supervisor in charge of the DWI program in Taylor County. The record established that, to become a technical supervisor, a person had to have a bachelor of science degree in chemistry or a related field with a minimum of 18 hours in chemistry, be a certified breath test operator, attend the technical supervisor training, and teach a breath test operator course for the Texas Department of Public Safety. Sergeant Harshberger met these requirements and also attended an annual Intoxilyzer 5000 Users' Group Seminar and is a member of the Southwestern Association of Forensic Scientists and the International Association of Chemical Testers.

Sergeant Harshberger testified on direct and cross-examination concerning the Intoxilyzer 5000. It was warrantied for parts and operation but was not warrantied fit for a particular purpose. Certain gases could affect the infrared reading, but an error message would be printed if that occurred. While the breath sample was vented into the atmosphere and not kept, a sample could be captured and retested; however, in Texas, the Intoxilyzer 5000 did not have a capturing device on it. The machine used a formula for an "average" person to calculate the blood/breath partition ratio, and the results gave a minimum of what a person's blood alcohol level was at that time. Time was a factor in determining accurate results. There was an error factor of plus or minus .01. Sergeant Harshberger differentiated between the 5 percent error allowable on the reference analysis test and the .01 differential possible

---

**9.** In his concurring opinion in *Rey*, Justice Mansfield articulates that:

The interest in accuracy is considerably less in noncapital cases, especially in lower level felony or misdemeanor cases where the accused, if convicted, faces a short period of incarceration, or even a fine and/or a probated sentence.

In such cases, the accused's burden of proof to support his request for a state-funded expert should be clear and convincing evidence and great weight should be given to the State's concern for cost.

*Rey v. State*, supra at 346.

on a subject test; described the absorption and elimination stages; explained the percentage of reliability on the field sobriety tests, individually and combined, asserting that there is no need for 100 percent accuracy since the tests are just an aid for the officer to use; and agreed that people could have a higher tolerance level based on different physical characteristics and, therefore, have different levels of impairment.

Reviewing and comparing the facts that Elmore wished to elicit from an expert with which to impeach the reliability of the intoxilyzer with the facts established by the State's expert upon cross-examination and the other evidence in this case, we find that the risk of error in the proceeding without such assistance to be minimal. Lay witnesses and juries are competent to make sensible and educated determinations about the state of the accused's intoxication and the accuracy of the use of an intoxilyzer from the evidence. Therefore, Elmore has not shown that the failure to appoint an expert was fundamentally unfair and that it resulted in an inaccurate adjudication as contemplated by *Ake.* See also *Taylor v. State,* 939 S.W.2d 148 (Tex.Cr.App.1996). Elmore's first point of error is overruled.

Elmore's second, third, and fourth points of error assert Constitutional violations of due process arising from the court's failure to appoint her an expert. Because the trial court did not err, no constitutional violations occurred. Elmore's remaining three points of error are overruled.

The judgment of the trial court is affirmed.