# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00536-CR

**Tommy Lee Rivers, Jr. Appellant**

**v.**

**The State of Texas, Appellee**

**FROM COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY
NO. 10-08165-3, HONORABLE DOUG ARNOLD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Tommy Lee Rivers of the Class A misdemeanor of possession of marijuana. *See* Tex. Health & Safety Code Ann. § 481.121 (West 2010). After Rivers pleaded true to enhancement allegations regarding his two prior felony convictions, the jury assessed his punishment at confinement for 330 days in the county jail and a fine of $1,500. *See* Tex. Penal Code Ann. § 12.43(a) (West 2011). At a pretrial hearing, Rivers requested that the court appoint an expert to assist in his defense. In his sole issue on appeal, Rivers argues that the trial court erred in denying this request. We affirm the judgment of the trial court.

## BACKGROUND

On October 6, 2010, Officer Raul Morales of the Round Rock Police Department was patrolling a section of Interstate Highway 35 in Williamson County, Texas. During the patrol, Morales observed a white van traveling northbound on the roadway at a speed in excess of the posted speed

limit. Morales initiated a traffic stop of the van and upon approach, observed two passengers. Morales advised Rivers, who was in the driver's seat, of the reason for the stop and asked him for his driver's license and insurance. According to Officer Morales, he noticed as he spoke with Rivers that Rivers was repeatedly glancing toward a backpack located near the center console. Based on this behavior, as well as other circumstances surrounding the stop, Morales developed a reasonable suspicion that Rivers was attempting to conceal weapons or drugs. Consequently, Office Morales requested Rivers's consent to search the backpack, and Rivers refused.

At that point, Morales requested assistance from his partner, Officer Jeffrey Gogolewski, a certified drug-dog handler. Upon arriving, Officer Gogolewski's trained drug dog, Chapo, began to do a "free-air sniff" around the van. According to Officer Gogolewski's testimony at trial, Chapo had made several alerts to the presence of drugs around the perimeter when the dog suddenly jumped into the van through an open window and laid down on the backpack. Gogolewski informed Morales that Chapo was alerting to the presence of drugs in the backpack, and upon questioning by Morales, Rivers admitted that the backpack contained marijuana. Officer Morales opened the backpack and found four ounces of marijuana and a scale.

Rivers was arrested and charged with possession of marijuana of more than two ounces; he pleaded not guilty and, upon filing an affidavit of indigency, was appointed counsel. Prior to trial, Rivers filed a motion requesting that the trial court appoint an expert on drug-detection dogs to assist with his defense, which the trial court denied. Rivers subsequently filed a motion to suppress, seeking to suppress all evidence obtained as a result of the traffic stop. The trial court denied Rivers's motion to suppress with respect to the marijuana and with respect to Rivers's admission that the backpack contained marijuana.

2

During the trial that followed, Officer Morales and Officer Gogolewski testified for the State, and Rivers testified on his own behalf. The jury found Rivers guilty as charged, and this appeal followed.

**ANALYSIS**

The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution protect individuals against unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. Evidence obtained in violation of the Fourth Amendment or Article I, Section 9 is subject to exclusion in a criminal proceeding. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Polk v. State*, 738 S.W.2d 274, 276 (Tex. Crim. App. 1987); *see* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). A search conducted without a warrant is *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

A sniff of the exterior of a vehicle by a trained drug-detection dog during a lawful traffic stop is not a search within the meaning of the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *Branch v. State*, 335 S.W.3d 893, 900 (Tex. App.—Austin 2011, pet. ref'd). Further, it is well established that a positive alert on a vehicle by a trained drug-detection dog, standing alone, may provide officers with probable cause to search the vehicle without a warrant. *Branch*, 335 S.W.3d at 901; *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd); *Haas v. State*, 172 S.W.3d 42, 54 (Tex. App.—Waco 2005, pet. ref'd); *see Florida v. Harris*, ___ U.S. ___, 133 S. Ct. 1050, 2013 WL 598440, at * 22 (2013) (concluding that police had probable cause to search defendant's truck where training records established drug dog's reliability

3

in detecting drugs and defendant failed to undermine that showing). Of course, a defendant may always challenge a vehicle search for lack of probable cause based on the surrounding circumstances, and in doing so, challenge the reliability of the drug-detection dog. *See Harris*, 2013 WL 598440, at *17 (noting that defendant must have opportunity to challenge evidence of drug-detection dog's reliability).

In this case, Rivers does not appeal the trial court's ruling on his motion to suppress. That is, Rivers does not directly contend, based on the evidence before the trial court at the hearing on his motion to suppress, that the search of his backpack was unconstitutional or that the trial court erred in failing to suppress evidence of the marijuana or his admission of its presence in the backpack. Instead, in his sole issue on appeal, Rivers complains of the trial court's denial of his request for appointment of an expert to assist in his defense. Specifically, Rivers argues that had he been provided the assistance of an expert regarding drug-dog training and searches, he could have successfully demonstrated at the hearing on his motion to suppress that (1) the drug-detection dog in this case, Chapo, was unreliable, and (2) as a result, there was no probable cause to support Officer Morales's search of the vehicle's interior and the backpack. We review the trial court's ruling on Rivers's motion for expert assistance for an abuse of discretion. *See Griffith v. State*, 983 S.W.2d 282, 286 (Tex. Crim. App. 1998); *Perales v. State*, 226 S.W.3d 531, 536 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Courts have recognized that indigent defendants have a constitutional right to a court-appointed expert in some circumstances. In the seminal case of *Ake v. Oklahoma*, the United States Supreme Court determined that an indigent defendant who relied on an insanity defense in a

4

capital case had a constitutional right to the assistance of a state-provided psychiatric expert. 470 U.S. 68, 77 (1985). The Court explained that the Due Process Clause of the Fourteenth Amendment requires that the State ensure an indigent defendant "access to the raw materials integral to the building of an effective defense." *Id*. at 76. As a result, the Supreme Court held that a defendant is entitled to the appointment of a psychiatric expert when it is shown that the defendant's sanity at the time of the offense is likely to be a significant factor at trial. *Id*. at 82-83. Since *Ake*, Texas courts have applied the rationale presented by the Supreme Court to conclude that the appointment of an expert was necessary in a variety of cases and areas of expertise. *Griffith*, 983 S.W.2d at 286; *see Rey v. State*, 897 S.W.2d 333, 342 (Tex. Crim. App. 1995) (pathologist in murder case); *McBride v. State*, 838 S.W.2d 248, 252 (Tex. Crim. App. 1992) (chemist in controlled substance case).

Although courts have recognized that the appointment of an expert is constitutionally required in some cases, this does not mean an indigent defendant is necessarily entitled to the assistance of an expert on every matter potentially helpful to his case or to the assistance of an expert of his choice. *See Griffith*, 983 S.W.2d at 286. The purpose of the appointment is not to provide the defendant with a perfect trial, but to provide a level playing field between the State and the defendant. *See id*. Thus, in deciding whether, and under what conditions, an expert's assistance is required, three factors are to be considered: (1) the private interest that will be affected by the action of the State, (2) the governmental interest that will be affected if the safeguard is to be provided, and (3) the probable value of the additional or substitute procedural safeguards that are sought and the risk of an erroneous deprivation of the affected interest if those safeguards are not

5

provided. *Ake*, 470 U.S. at 77; *Davis v. State*, 905 S.W.2d 655, 659 (Tex. App.—Texarkana 1995, pet. ref'd).

With regard to the third factor, an indigent defendant is entitled to expert assistance only when he makes a preliminary showing that the requested expert assistance is necessary to address a significant issue at trial. *Rey*, 897 S.W.2d at 339. In order to carry this burden, the requesting defendant must present more than "undeveloped assertions that the requested assistance would be beneficial." *Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997). Rather, the defendant must demonstrate a reasonable probability that the expert would provide assistance and that denial of expert assistance would cause a fundamentally unfair trial. *Mason v. State*, 341 S.W.3d 566, 568 (Tex. App.—Amarillo 2011, pet. ref'd); *Davis*, 905 S.W.2d at 659; *see Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (explaining that appellant failed to establish that expert sought was "essential to developing and presenting his defense, without which his trial was rendered fundamentally unfair"). A defendant should support his motion with (1) affidavits or other evidence in support of the defensive theory, (2) an explanation as to what his defensive theory is and why expert assistance would be helpful in establishing that theory, and (3) a showing that there was reason to question the State's expert and proof. *Rey*, 897 S.W.2d at 341.

Here, in his motion for a defense expert, Rivers requested the appointment of a drug-dog expert to assist in determining "the reliability and credibility of both Chapo and drug dog detection methods generally." Rivers explained that his defensive theory is that Chapo had been used to manufacture probable cause and that the dog did not, in fact, alert on Rivers's vehicle prior to entering the vehicle. Rivers argued that an expert is needed "to interpret the various kinds of

6

actions, including alerts and indications by the Narcotics Detection Dog 'Chapo'" and that "this interpretation of the dog's actions will assist the court in determining if/when probable cause was ever gained." Finally, Rivers explained that the best method of testing the reliability of Chapo was for "an independent expert to conduct a controlled, double-blind experiment to determine the error rate of Chapo's alerts indications, and other actions." In effect, Rivers seeks the appointment of an expert to impeach the reliability of Chapo and his handler, Officer Gogolewski. Based on these allegations, Rivers argues that his motion requesting expert assistance adequately demonstrates that the alert by Chapo would likely be a significant issue at several stages of the proceedings and that he needed the assistance of an expert on this issue.

We agree that Chapo's alerts were central to the State's case for probable cause supporting the search of Rivers's backpack and to the State's case at trial. However, Rivers does not carry his preliminary burden under *Ake* simply by demonstrating that expert assistance on a significant issue would be *helpful*. Instead, Rivers must demonstrate that the requested expert assistance is *necessary* to address the issue, such that denial of the requested assistance carries an unacceptable risk of error. *See Moore*, 935 S.W.2d at 130. Upon reviewing the record, we conclude that Rivers has failed to sufficiently make this demonstration.

While Rivers explains in his motion that he needs a drug-dog expert to evaluate Chapo's performance, he has not demonstrated that there is any reason to believe that the alerts by Chapo in this case were unreliable. For instance, Rivers's motion contains no factual allegations that would reasonably support a conclusion that either Chapo or Office Gogolewski is generally unreliable or, based on the circumstances in this case, that these particular alerts by Chapo were

unreliable. In addition, Rivers did not provide with his motion any affidavits or other evidence demonstrating facts that would reasonably support a conclusion that Chapo's alerts were unreliable, and we have no record of a hearing on the motion. Similarly, Rivers did not attach any proof or allege any facts demonstrating that there was any reason to question the State's expert, Officer Gogolewski, on the subject.[1] Without this information, the trial court had no way to evaluate the risk of error in proceeding without the requested expert assistance. *See Ake*, 470 U.S. at 77 (noting that third factor includes analysis of "the risk of an erroneous deprivation of the affected interest if those safeguards are not provided").

Further, Rivers did not present any information with regard to the nature of the proposed expert's field or the complexity of the issue. *See Rey*, 897 S.W.2d at 338 ("The nature of an expert's field and the importance and complexity of the issue will bear directly upon whether the appointment of an expert will be helpful."). For instance, Rivers did not explain or present evidence with regard to the nature of drug-dog training and field performance or with regard to the difficulty of interpreting drug-dog alerts. Without this information, the trial court could not evaluate the probable value of expert assistance on the issue. *See Ake*, 470 U.S. at 77 (noting that third factor

----

[1] In his motion, Rivers suggests that the risk of "manufacture[d] probable cause" is high in this case because Chapo is a "'passive' alerter and that the only person who can interpret the dog's cues [is] the police handler." We take Rivers's argument to mean that Officer Gogolewski could have easily fabricated that Chapo was, in fact, attempting to alert him to the presence of drugs in the vehicle or the backpack. This argument implicates the credibility of Officer Gogolewski, not the reliability or accuracy of Chapo. We believe that lay witnesses and fact finders are competent to make determinations about the credibility of a handling officer. *Cf. Elmore v. State*, 968 S.W.2d 462, 467 (Tex. App.—Eastland 1998, pet. ref'd) (concluding that "lay witnesses and juries are competent to make sensible and educated determinations about the state of the accused's intoxication and the accuracy of the use of an intoxilyzer from the evidence").

includes analysis of "the probable value of the additional or substitute procedural safeguards that are sought"). In other words, based on the record before it, the trial court could have reasonably determined that Rivers had failed to demonstrate that the requested expert assistance was necessary. *See Elmore v. State*, 968 S.W.2d 462, 467 (Tex. App.—Eastland 1998, pet. ref'd) (concluding trial court did not err in refusing to appoint expert on intoxilyzer because defendant did not show that failure to appoint "was fundamentally unfair and that it resulted in an inaccurate adjudication as contemplated by *Ake*"). Consequently, we cannot conclude that the trial court abused its discretion in denying Rivers's request for appointed expert assistance, and we overrule Rivers's sole issue on appeal. *See Ex parte Jimenez*, 364 S.W.3d 866, 877-78 (Tex. Crim. App. 2012) (reasonableness of trial court's decision on motion to appoint expert under *Ake* depends on information before trial court when it rules on motion).

## CONCLUSION

Having overruled Rivers's sole issue on appeal, we affirm the judgment of the trial court.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: April 19, 2013

Do Not Publish